IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HEATHER GOFF, | ) | |
| | ) | CASE NO. CV 03-268-S-MHW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| | ) | |
| WASHINGTON COUNTY, a political | ) | |
| subdivision of the State of Idaho; and | ) | |
| STEVE PATTERSON, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>INTRODUCTION</u>

This case involves a retaliation claim of a former Washington County paramedic against her former employer, Defendant Washington County, and supervisor, Steve Patterson ("Patterson")(collectively "Defendants").  This matter was tried before a jury in an eight-day trial from November 2 through November 11, 2005.  At trial, Plaintiff Heather Goff ("Goff") argued Washington County and Patterson, as an agent of Washington County, violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) and the Idaho Human rights Act, Idaho Code § 67-3911 by retaliating against Goff for the filing and settlement of a gender discrimination and wage discrimination claim.  Goff also claimed she was battered by Patterson.

**Memorandum Decision and Order - page 1**

Currently pending before the Court are: (1) Motion Re ITCA (Docket no. 102), filed on November 18, 2005; (2) Fed.R.Civ.P 59 Motion for a New Trial (Docket No. 107), filed on December 7, 2005; and (3) Defendants' Renewed Fed.R.Civ.P 50 Motion, filed on December 7, 2005. The Court heard oral argument on these motions on March 8, 2006. The Court issues its decision as follows.

## I. Background[1]

Plaintiff Heather Goff ("Goff") began working for Defendant Washington County as a part-time paramedic in April 1996. She remained a part-time paramedic until February 23, 2000 when Washington County changed her status to full-time. Prior to being hired for the full-time position, Goff filed a Complaint with the Idaho Human Rights Commission ("IHRC") on February 8, 2000, alleging gender discrimination and unequal pay. The matter was settled in the fall of 2001. After the settlement of her claim, Goff argues that her employment relationship with Washington County began to deteriorate and the onslaught of retaliatory mistreatment at the hands of Washington County began – and ended with her undeserved suspension and eventual termination.[2]

This matter was tried before a jury in an eight-day trial from November 2 through November 11, 2005. At the trial's conclusion, the jury returned a Special Verdict Form (Docket No. 99), finding Washington County retaliated against Goff for filing and settling her wage discrimination claim. The jury further found that Washington County failed to establish

---

[1]In reviewing the facts, the Court is guided by the jury's verdict in favor of Goff.

[2]The factual background of this matter is fully set forth in the court's order of December 30, 2002, granting partial summary judgment in favor of defendants.

**Memorandum Decision and Order - page 2**

legitimate, non-retaliatory reasons for its employment decisions with respect to Goff.  The jury awarded economic damages in the amount of $200,000 and non-economic damages in the amount of $50,000.  The jury also found Patterson liable for battery and awarded damages to Goff in the amount of $50,000.  In finding Patterson battered Goff, the jury determined that Patterson did not act in self-defense.  The jury also returned a Special Verdict Form (Docket No. 101), finding that Patterson did not act with malice or criminal intent.

At the conclusion of Goff's evidence, Defendants made an oral motion for judgment as a matter of law pursuant to Fed.R.Civ.P 50, arguing Goff had failed to show a causal connection between her settlement of the wage claim and her suspension and eventual termination. Defendants also moved for judgment as a matter of law on the battery claim, claiming under the Idaho Tort Claims Act ("ITCA") (I.C. § 6-901 *et seq.*) that Goff had failed to show that Defendant Patterson acted with malice or criminal intent at the time he battered Goff, and that pursuant to I.C. § § 6-904(3) and 6-903(e) Patterson was therefore immune.  The Court denied the motion without prejudice.

Defendants renew their motion for judgment as a matter of law pursuant to Fed.R.Civ.P 50.  Defendants have filed a Rule 59 Motion for New Trial as well.  Prior to Defendants filing the renewed Rule 50 motion and the Rule 59 motion, Goff filed a motion seeking an order from the Court declaring the ITCA, Idaho Code § § 6-901 through 6-929, does not create a statutory immunity for Patterson's conduct. As many of the issues overlap, the Court will address the motions collectively.

## II. Discussion

Defendants Washington County and Steve Patterson move the Court for judgment as a matter of law as to liability.[3]  Steve Patterson argues he is immune from any cause of action based on battery under Idaho Code § 6-904(3). With respect to Goff's retaliation claim, Washington County argues that Goff failed to establish that she suffered an adverse employment action.  In the alternative, Washington County argues that Goff failed to prove a causal connection between her filing and settling a wage complaint and any allegedly adverse treatment at the hands of Washington County.  Finally, Washington County argues it established legitimate, non-retaliatory reasons for actions taken against Goff.  Defendants also cite errors in the instructions to the jury, which the Court will consider in the context of Defendants' request for a new trial.

### A. Standards of Review

### 1. Motion as a Matter of Law

Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.  As the standard for summary judgment under Rule 56, which parallels the standard for judgment as a matter of law under Rule 50, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 134 (2000).  While the court should review the record as

---

[3] Goff file a motion regarding Patterson's claim for immunity under the ITCA.  As this issue is raised in Defendants' Motion For Judgment as a Matter of Law, the Court will consider Goff's arguments in the context of Defendants' Motion.

a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Id.*

### 2. Motion for a New Trial

Fed. R. Civ. P. 59 provides that a new trial may be granted "on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59(a).  The United States Supreme Court has stated generally that a federal trial court has discretion to grant a new trial and that the trial court is in the best position to decide whether a verdict was, for example, excessive or not based on the evidence.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (quotation omitted).  If the trial court's decision on a motion for a new trial is appealed, the federal court of appeals should then review the district court's determination under an abuse-of-discretion standard.  *Id.*

The Ninth Circuit has consistently held that a district court's finding that there is substantial evidence to uphold the verdict on a motion for judgment as a matter of law will not necessarily prevent the Court from ordering a new trial.  However, Ninth Circuit case law has been less consistent in articulating the circumstances that warrant a new trial, stating variously that district courts have discretion to grant Rule 59 motions when the verdict is "against the clear [or 'great'] weight of the evidence," when the evidence shows that the jury has reached a "seriously erroneous result," and/or when the evidence shows that acceptance of the verdict would cause a "miscarriage of justice." *See EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir.1997) (internal quotations and citations omitted)(Although the court's ruling on an alternative motion for a new trial involves the exercise of some discretion, a stringent standard applies when

the motion is based on insufficiency of the evidence. A motion will be granted on this ground only if the verdict is against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result.); *Roy v. Volkswagen of America*, 896 F.2d 1174, 1176 (9th Cir.1990) ("The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.") (*citing Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir.1976) *cert. denied,* 429 U.S. 1074 (1977)) (internal quotation omitted).

In deciding a motion for a new trial, the Court may weigh the evidence and credibility of the witnesses. *Roy*, 896 F.2d at 1176. However, the Court is not justified in granting a new trial "merely because it might have come to a different result from that reached by the jury." *Id.* (internal citation and quotation marks omitted). This does not mean that the Court may approve a miscarriage of justice. If, having given full respect to the jury's findings, the Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected a new trial should be ordered.

## A. ITCA

The Idaho Tort Claims Act, specifically I.C. § 6-903, subjects government entities to liability for negligent or wrongful acts committed by the entity or its employees where a private person would also be liable. *Herrera v. Conner*, 111 Idaho 1012, 1021, 729 P.2d 1075, 1084 (Ct.App.1987); *Sprague v. City of Burley*, 109 Idaho 656, 665, 710 P.2d 566, 575 (1985). The ITCA "was designed to alleviate the harshness of previously existing law, which afforded

governments and their employees absolute immunity from liability for wrongful acts." *Grant v. City of Twin Falls*, 120 Idaho 69, 76, 813 P.2d 880, 887 (1991).

Steve Patterson argues he is immune from a suit of battery under Idaho Code § 6-904(3), which provides in pertinent part: "A government entity and its employees while not acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which: ... 3. Arises out of battery..."  Therefore, by application of I.C. §§ 6-903(c) and 6-904(3), a governmental entity is absolutely immune from suits arising out of a battery. When a battery is committed by an employee while acting beyond the scope of employment or is committed by an employee with malice or criminal intent, liability attaches to the individual employee.  However, if the alleged acts were committed within the scope of employment, even the offending employee will be immunized for intentional torts also found to be within that scope.  *See Wilson v. Drake*, 87 F.3d 1073 (9th Cir. 1996).

For the period in question pertinent to this litigation, Steve Patterson was the supervisor of the Weiser Ambulance District, i.e., an employee of a government entity protected under the ITCA.  Thus, in order for Patterson to be liable for battery having been afforded the protection of the ITCA, Goff must establish that Patterson was <u>not</u> acting within the course and scope of his employment, and that Patterson was acting <u>with</u> malice or criminal intent.  The Court will first address whether Patterson was acting in the course and scope of his employment and then will address whether Patterson acted with malice or criminal intent.

### 1. Course and Scope of His Employment

The jury found Patterson's actions on November 11, 2001 amounted to battery and found Patterson individually liable in the amount of $50,000.  Patterson argues, however, that his

**Memorandum Decision and Order - page 7**

verbal exchange with Goff and the shoving incident was motivated "by his duty as her supervisor in attempting to counsel her for performance deficiencies" at the time the battery occurred (*See Defs.' Resp. Pls.' Mot. Re: ITCA*, p. 2), and thus he was acting within the course and scope of his employment.

"For the purposes of this act and not otherwise, it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent."  I.C. § 6-903(e). An act is considered within the scope of employment are "those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, <u>even though quite improper ones</u>, of carrying out the objectives of employment."  *The Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 184, 983 P.2d 834, 838 (1999)(emphasis added); *see also Anderson v. Spalding*,137 Idaho 509,518-519, 50 P.3d 1004, 1013-14 (2002).  In *Wooley*, the court further elaborated that an employee's conduct  is within the scope of employment if "it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master. 133 Idaho at 184, 983 P.2d at 838; *see also Burlington Idus., Inc. v. Ellerth*, 524 U.S. 742 (1998)(*citing* Restatement §§ 228(1)(c), 230)("The Restatement defines conduct, including an intentional tort, to be within the scope of employment when "actuated, at least in part, by a purpose to serve the [employer]," even if it is forbidden by the employer.").

Evidence was presented at trial that when Patterson sped to the Weiser ambulance hall on November 11, 2001, he did so for the purpose of covering the ambulance hall because he

believed the hall had been left unattended by Goff, who had taken her back-up, Jerry Sullivan, on a call.  While Goff attempts to characterize Patterson's action as purely personal in nature because Patterson interjected personal comments relating to Goff's ruining his day off and his relations with his wife, both Goff and Patterson testified that the focus of Patterson's comments to Goff related to her inadequate job performance.  Furthermore, the exchange between Goff and Patterson occurred at the Weiser ambulance hall – their primary place of employment.  As such, it appears Patterson was acting with the time and space of his employment and his conduct was motivated, <u>at least in part</u>, by the purpose of effectuating his duties as the supervisor of the ambulance hall.  *C.f.  Eldridge v. Black Canyon Irrigation Dist.*, 55 Idaho 443, 450,  43 P.2d 1052,1054 (1935)(*quoting Ruppe v. City of Los Angeles,* 186 Cal. 400, 402199 P. 496, 496)("It is, however, wholly immaterial whether or not the assault was authorized by the city, or was committed by Nealon in violation of his instructions. It is plain enough that it was committed by him in the course of doing that which he had been sent to the building by the city to do, and in furtherance of its doing; that it was, in other words, an act done by him in the course of his employment.").  Although Patterson clearly stepped outside the bounds of professional behavior when he battered Goff, he did not step outside the scope of employment.  As the Court has determined that Patterson was acting within the course and scope of his employment when he committed the battery against Goff, the Court must next determine whether Patterson acted with malice or criminal intent.

### 2. Malice or Criminal Intent

In addition to establishing that he was acting in the scope of his employment, Patterson must also show that he acted without malice or criminal intent when he battered Goff.  I.C. § 6-

903(e).  Goff argues that Patterson has failed to meet this burden despite the jury's advisory finding that Patterson lacked malice or criminal intent.

"Malice is defined as actual malice, or "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended."  *Anderson v. City of Pocatello*, 112 Idaho 176, 187-88, 731 P.2d 171, 181-83 (1986).  "Criminal intent," for purposes of the ITCA, is defined as "the intentional commission of a wrongful or unlawful act without legal justification or excuse, whether or not the injury was intended.  *Id.*

Here, we have a jury finding that Patterson acted without malice and without criminal intent.  While this is not dispositive of the issue as the jury's finding was simply an advisory verdict, it is certainly persuasive.  Independently reviewing the evidence, the Court finds that the evidence adduced at trial supports such a finding.  Accordingly, the Court finds Patterson is immune from liability for battery.

### B. Retaliation

In the context of Title VII cases, "[a]fter a full trial, the only pertinent question is whether there was enough evidence to permit the jury to consider the ultimate questions of discrimination and retaliation.  It is not an occasion for the court to march back through the intermediary burden-shifting steps established by McDonnell Douglas. We instead look to the totality of the evidence to determine whether plaintiffs presented sufficient evidence to support the jury's determinations that they were the victims of intentional...retaliation." *Harvey v. Office Banks and Real Estate*, 377 F.3d 698, 707-708 (7th Cir. 2004)(citations omitted); *see also Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir.2000) (" 'When a case has

been fully tried on the merits, the adequacy of a party's showing at any particular stage of the McDonnell Douglas ritual is unimportant.'....A Title VII plaintiff bears the burden of proving not only that the employer's purported reasons for taking an adverse employment action are pretextual, but also that the employer engaged in illegal discrimination or retaliation.") (citations omitted).

To make out a *prima facie* case of retaliation, Goff must establish that: 1) she engaged in a protected activity; 2) she suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d at 1064 (9th Cir. 2002), *citing Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).

### 1. Adverse Employment Action

At trial, Goff was required to prove by a preponderance of the evidence that she suffered an adverse employment action(s) at the hands of her employer, Washington County.  Washington County maintains Goff failed to meet her burden.  Washington County suggest that only Goff's suspension and termination could be the only actions by Washington County against Goff that the jury could consider as adverse employment actions.  The Court disagrees.

The Ninth Circuit is among the circuits adopting the most lenient standard for establishing an adverse employment action.[4]  The Ninth Circuit  has explicitly adopted a more expansive EEOC definition of "adverse employment action."  *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000), which defines "adverse employment action" as conduct "reasonably likely to deter the

---

[4]The other circuits that follow the more lenient standard, versus the intermediate standard followed by the Second and Third Circuits or the strictest standard of the Fifth and Eighth Circuits, are the First, Seventh, Tenth, Eleventh, and D.C. Circuits.  *See Ray*, 217 F.3d at 1240.

charging party or others from engaging in protected activity." *Id.* (*quoting* EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)).  This test for adverse treatment does not focus on the ultimate effect of each employment action, but rather it focuses on the deterrent effects.  *Id.* Furthermore, this test achieves the letter and purpose of 42 U.S.C. § 2000(e)-3(a), which "does not limit what type of discrimination is covered, nor does it prescribe a minimum level of severity for actionable discrimination." *Id.* (*citing Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996)("There is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint.")

As evidence of adverse employment actions, Goff highlights the following actions which occurred after she settled her wage discrimination claim.  At the time Goff was in the process of concluding the settlement of her wage discrimination claim, Patterson informed a co-worker of Ms. Goff that the ambulance district employees would not be receiving a promised raise because of the settlement of Ms. Goff's wage claim.  Next, on November 11, 2001, Patterson yelled at Ms. Goff for her failure to cover the ambulance hall and battered her during the verbal altercation. After Goff reported the incident to Jim Echanis, the Human Resource Officer, Washington County failed to investigate the battery in direct contravention of its policy and procedural manual.  Washington County also failed to discipline Patterson for his battery of Goff.  In fact, rather than investigating the matter and disciplining Patterson, the jury could have reasonably found, as argued by Goff, that Echanis and Patterson ambushed Goff in a "mediation" meeting after Patterson solicited various statements, which purportedly documented, after-the-fact, poor performance by Goff.

In May 2002, Goff was suspended for two weeks without pay after an incident that occurred at Weiser Memorial Hospital.  Before making the decision to suspend Goff, Patterson acknowledges that he failed to conduct independent interviews of the hospital staff; he did not speak personally to Goff about what occurred; he did not inspect the hospital records; nor did he consult Dr. Drake, the medical control physician.  When Dr. Drake conducted his own investigation, he concluded the suspension was unwarranted.

After the suspension, Goff opted to take FMLA leave, and as the FMLA leave approached its end, Patterson went to various ambulance district employees' homes and asked them if they would work with Goff when she returned to work.  Each of them stated they would work with Goff upon her return.  In fact, one employee who had previously refused to work with Goff because of a personality conflict informed Patterson he would now work with Goff because of how she was viewed by others in the ambulance district.  Nonetheless, Patterson advised Dr. Drake that Goff's return would cause dissension among the ambulance district employees because they did <u>not</u> want to work with her.

In the end, Goff did not return to work because her treating physician failed to release her to work.  Prior to taking FMLA leave, Washington County required Goff to undergo evaluation by Dr. Dwyer.  After examining Goff, Dwyer agreed that Goff met the criteria for medical disability for psychiatric reasons and should not be released to work until medically cleared for return by her treating clinician, Lisa Lawrence.  While on leave, Goff continued to see Lisa Lawrence.  Lawrence kept Echanis apprised of her condition during this time.  On August 26, 2002, Lawrence made the decision to release Goff to begin working limited shifts.  However, Patterson and Echanis did not believe Goff was ready to return to work.  Goff claims Echanis and

**Memorandum Decision and Order - page 13**

Patterson therefore conspired to preclude her return to her position at a paramedic with Weiser County by convincing Dr. Drake to speak to Lawrence in order to persuade her that her decision to release Goff for work was premature.

At trial the evidence demonstrated that Patterson approached Dr. Drake at home after Goff had been released to work and expressed concern about Goff's return because of the supposed problems it would cause with the other employees.  Patterson also informed Dr. Drake he was concerned about Goff's return in light of Dr. Dwyer's July 2002 report.  While Dr. Drake felt that Patterson wanted him to take the place of Lisa Lawrence and Dr. Dwyer and to assess Goff's medical capacity to return to service, he did agree to speak to Ms. Lawrence about some of the concerns that had been raised by Dr. Dwyer's report.  Dr. Drake then advised Lawrence that she could be left open to liability for her decision to return Goff to work in light of Dr. Dwyer's assessment.  Echanis also sent a letter directly to Lawrence expressing his own concerns about Goff returning to work.  After speaking to Dr. Drake, Lawrence changed her evaluation and retracted Goff's work release.  Without Lawrence's release, Goff was not allowed to return to work.  Despite Goff's insistence that she was ready to return, she was precluded from doing so, and her leave expired on September 17, 2002 and Washington County no longer legally had to hold her position open.  Goff received formal notice of her termination on October 17, 2002.

Washington County argues that none of these acts are sufficient to constitute an adverse employment action.  In making this argument it cites several cases which hold certain actions cannot be actionable adverse employment actions as a matter of law.  *See Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998)("All he has shown is that he was bad-mouthed and verbally threatened. It would be the height of irony, indeed, if mere speech, in response to speech,

could constitute a First Amendment violation."); *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d

1177 (9th Cir. 2005)(finding "snide remarks" and threats, such as "your number's up" and "don't

forget who got you where you are" made by the supervisor to the employee were not sufficiently

severe to support a retaliation claim); *Strother v. Southern California Permanente Med. Grp.*, 79

F.3d 859, 869 (9ᵗʰ Cir. 1996)(*citing Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590,

615, 262 Cal.Rptr. 842, 856 (1989)(finding that the existence of a hostile work environment could

make employer liable for retaliation, but noting that "[o]stracism...does not amount to a hostile

environment")); *Lyons v. England*, 307 F.3d 1092, 118 (9ᵗʰ Cir. 1996)(finding mediocre

performance evaluations without further adverse change to terms and conditions of employment,

such as making the evaluations available to other potential employers or subjecting plaintiff to a

meaningful change in work assignments, did not rise to the level of an adverse employment

action); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1238-39 (9ᵗʰ Cir. 1999)(finding the

County's refusal to extend the plaintiff's 'right to return' beyond a year, which was dictated by its

leave policy, was not an adverse employment action when plaintiff had not presented evidence of

any specific instance of harassment, but only complained of a general sense of isolation in the

workplace).

 First, the Court notes that each of these cases must be evaluated according to their specific

facts.  What Washington County ignores is that each of these cases involved situations where the

plaintiff only alleged one retaliatory act, or certain isolated instances.  In this case, Goff alleged

numerous retaliatory acts.  When one considering all of the acts by Washington County against

Goff in a light most favorable to Goff and drawing all inferences in her favor, the jury's finding

that Goff suffered actionable adverse employment actions does not deviate from Ninth Circuit

case law.  *See, e.g., Ray*, 217 F.3d at 1243-44 (finding the elimination of a flexible start-time

policy, the institution of lockdown procedures, reduction of workload, and the disproportionate

reduction in pay in comparison with the reductions faced by other employees each constituted an

adverse employment action); *Hasimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)(finding

dissemination of an unfavorable job reference was an adverse employment action even though

defendant proved the poor job reference did not affect the prospective employer's decision not to

hire the plaintiff)  *Strothers*, 79 F.3d at 869; *see also McKenzie v. Illinois Dept. of Transp.*, 92

F.3d 473, 483-84 (7th Cir.1996) (finding inconvenience of discontinued hand delivery of forms

sufficient to show an adverse action); *Johnson v. Milwaukee School of Engineering,* 258

F.Supp.2d 896 (E.D.Wis. 2003)(finding a plaintiff's allegations that his supervisor mopped his

feet, that he had a cross and dagger drawn in his broom closet, that his work was monitored more

closely than other employees, that he was prevented from congregating with other plaintiffs and

that defendant refused to provide him with the assistance necessary to clean his assigned area

were all actions that were reasonably likely to deter an employee from complaining about

discrimination in the workplace).

Although many of these cases were decided before the Ninth Circuit articulated its

"reasonably likely to deter**"** standard, in each of the circumstances, the questioned employer

action could be found to be conduct that would be "reasonably likely to deter the charging party

or others from engaging in protected activity."  For example in *Strothers*, the plaintiff proffered

evidence of the following employment actions: she was replaced as the coordinator of a program,

and excluded from educational seminars, meetings, and positions involving quality assurance, all

positions that may have entitled her to increased pay; she was excluded from other meetings

which the court did not identify as involving pay increases; she was denied secretarial support; she was given a more burdensome work schedule; and she was subjected to verbal and physical abuse at the hands of her peers. 79 F.3d at 869.  The trial court had granted summary judgment on the retaliation claim. The reviewing court reversed, holding that the plaintiff proffered sufficient facts to establish that she suffered an adverse employment action.  *Id.* at 870.  In *Strothers*, the court did not parse through every employer action to determine if each one of them constituted an actionable adverse employment action in and of itself.  However, it is clear the totality of the circumstances in *Strothers* warranted a finding that the plaintiff suffered an adverse employment action.

Furthermore, other circuits that interpret adverse employment action broadly in the retaliation context have upheld jury verdicts in similar circumstances.  For example, in *Kim v. Nash Finch Company*, 123 F.3d 1046 (8th Cir. 1997), the plaintiff presented evidence that the defendant had "papered" his personnel file with negative reports, including two written reprimands. *Id.* at 1060.  The plaintiff also presented evidence that his duties had been reduced, that he received much lower performance evaluations than he received before filing his employment discrimination charge, and that he was required to undergo special remedial training. *Id.*  However, plaintiff had not been discharged, demoted, or suspended. *Id.* Yet, the court concluded that these were the type of "serious employment consequences that adversely affected or undermined [plaintiff's] position."  *Id.*  In continuing its analysis, the court further stated, "[i]n any event, we need not decide in the present case whether each act in itself constituted actionable "adverse employment action" because [plaintiff] essentially claimed that [defendant] had systematically retaliated against him, that is, that all the acts were taken in response to his filing

the employment discrimination charge and were thus connected to one another." Based on this collection of actions, the court held that the defendant's conduct constituted an adverse employment action as a matter of law.

Moreover, in *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir. 1998)**,** the Eleventh Circuit adopted a similar stance to the Eight Circuit in concluding the plaintiff had suffered an adverse employment action having pointed to the following actions that occurred after she filed her EEOC charge as evidence of retaliation: (1) the day after she filed her EEOC charge, she was incorrectly listed as a no-show on a day she was not scheduled to work; she discovered the error when she went to the Wal-Mart to shop, and when she brought the error to the attention of her manager, she was forced her to work anyway without a lunch break; (2) during the following two weeks after she filed her EEOC charge, plaintiff received two written reprimands and was suspended after the second reprimand; the plaintiff had not received a reprimand prior to her filing the EEOC charge; (3) her supervisor began soliciting negative comments from plaintiff's co-workers, but did not seek statements from employees who would have given the plaintiff positive comments; (4) a couple of months later, the plaintiff reported to work to discover she had not been scheduled and when she announced her intention to call Wal-Mart headquarters to ask why she had not been scheduled, an assistant manager threatened to shoot her in the head; and (5) a month later, plaintiff suffered an allergic reaction that necessitated medical care; an assistant manager was aware of plaintiff's condition and that she needed treatment, but nevertheless needlessly delayed authorizing the medical treatment. *Id.* at 1456. Like the court in *Nash Finch*, the *Wideman* court did not attempt to determine whether each action independently constituted an adverse employment action. *Id.* Instead, the court looked to the totality of the

**Memorandum Decision and Order - page 18**

circumstances in reaching its conclusion that the plaintiff had established she suffered an adverse

employment action.  Specifically, the court reasoned:

> Although we do not doubt that there is some threshold level of substantiality that must
> be met for unlawful discrimination to be cognizable under the anti-retaliation clause,
> we need not determine in this case the exact notch into which the bar should be
> placed. It is enough to conclude, as we do, that the actions about which [plaintiff]
> complains considered collectively are sufficient to constitute prohibited
> discrimination. We need not and do not decide whether anything less than the totality
> of the alleged reprisals would be sufficient. Accordingly, for judgment as a matter of
> law purposes, [plaintiff] evidence satisfied the adverse employment action
> requirement for a prima facie case of retaliation.
> *Id.*

Similarly, in this case, viewing the evidence in the light most favorable to the non-moving

party, and granting the jury's determination every reasonable inference without dissecting each

action allegedly taken by Washington County against Goff, the Court concludes that Goff

presented sufficient evidence from which reasonable jurors could find that Goff suffered the type

of adverse employment actions that would reasonably deter an employee from engaging in

protected activity.  Accordingly, for judgment as a matter of law purposes, Goff has met her

burden of establishing she suffered an adverse employment action.  Nor will the Court grant a

new trial to determine this issue.

### 2. Causal Connection

Washington County also argues that, assuming there was an adverse employment action,

there was no evidence of a causal relationship between Goff's filing and settling her wage

discrimination claim and any adverse employment action as matter of law.  In the alternative,

Washington County argues it should be granted a new trial because the clear weight of the

evidence established there was no causal connection between Goff's wage claim and actions

taken by Washington County.

**Memorandum Decision and Order - page 19**

To establish causation, Goff had to show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the adverse employment action] and that but for such activity she would not have [suffered the adverse employment action]." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) (quoting *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986)). The Ninth Circuit has explained that the Court may infer a causal connection between an employer's action and the employee's protected activity from "proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244 (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)); *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 507 (9th Cir.2000) (noting that causation can be inferred from timing alone). However, "timing alone will not show causation in all cases; rather, 'in order to support an inference of retaliatory motive, the [adverse employment action] must have occurred fairly soon after the employee's protected expression.'" *Villarimo*, 281 F.3d at 1065 (quoting *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1009-10 (7th Cir. 2000)). The Court may also infer causation through circumstantial evidence such as the employer's knowledge that the employee engaged in a protected activity. *Yartzoff*, 809 F.3d at 1376.

The jury could have reasonably assumed that Patterson was aware of the pending settlement of Goff's wage discrimination claim despite his protestations to the contrary. Evidence presented at trial indicated that Patterson was extensively involved in creating, proposing, and obtaining passage of the ambulance district budget. Furthermore, Ray Hart testified that Patterson had indicated to him in September or October 2001 that the ambulance district employees would not be receiving their promised raises because of the settlement of Goff's wage

**Memorandum Decision and Order - page 20**

discrimination claim.  While the statement that the ambulance district employees would not receive their raises because of the settlement of Goff's wage claim is incorrect, the statement does suggest that Patterson knew of the impending settlement of Goff's claim.

In addition, Goff alleged the November 11, 2001 shoving incident, which occurred almost simultaneously with final settlement of her wage claim, was retaliatory in nature.  Goff further asserted at trial that Washington County's failure to investigate in accordance with its own procedure Patterson's battery against her was also retaliatory in nature and also occurred in close temporal proximity to the settlement of Goff's wage claim.  According to Goff, these events merely marked the beginning of a pattern of retaliation, which ended with the events in May 2002 and beyond and can be thus linked to the settlement of her wage claim.  *See Porter v. California Dept. of Corrections*, 419 F.3d 885, 894 (9th Cir. 2005) ("Although a lack of temporal proximity may make it more difficult to show causation, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference.")(citation and quotation marks omitted).  Again, viewing the evidence in the light most favorable to Goff, i.e., the evidence suggesting Patterson's purported knowledge of the settlement of the wage discrimination claim and the close temporal proximity between the settlement of the claim and the allegedly adverse employment actions that occurred in November and December, as well as the continuing pattern of retaliation, the record contains sufficient evidence to permit an inference of a causal link between the protected activity and the adverse employment actions.

### 3. Legitimate, Non-Retaliatory Reasons

Washington County also argues that is provided legitimate, non-retaliatory reaons for its actions against Goff.  However, when the jury was presented this question whether Washington

County established legitimate, non-retaliatory reasons for its employment decision with respect to Goff, it marked the line next to "No."  While it is true that Washington County proffered legitimate reasons for its conduct, the burden then shifted to Goff to demonstrate the proffered reasons were pretextual.  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The jury was properly instructed on this issue.  Clearly the jury did not find Washington County's proffered reasons were credible and ultimately found that Washington County subjected Goff to adverse employment actions in retaliation for Goff's filing and settling the wage discrimination claim.  The Court finds Goff satisfied her burden by presenting evidence  from which the jury could reasonably conclude that Washington County's reasons were pretextual.

### C. Jury Instructions

In its request for a new trial, Washington County argues that the jury instructions were misleading because they did not specify which actions the jury could consider as being "adverse employment actions" for the purposes of its deliberations.  "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir.1999) (*quoting Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir.1996)).  An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless.  While this standard of review is less stringent than review for harmless error in a criminal case, it is more stringent than review for sufficiency of the evidence, in which we view the evidence in the light most favorable to the prevailing party.  In reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor because the jury's verdict may have resulted from a misapprehension of law rather than from factual determinations

in favor of the prevailing party. *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001) (citations omitted).

Washington County finds error with Final Jury Instruction No. 15, which provided in part, "Ms. Goff is seeking damages for retaliation.  Those elements, which Ms. Goff must prove by a preponderance of the evidence, are as follows....2. Her employer, Defendant Washington County, subjected Ms. Goff to an adverse employment action(s) after her wage discrimination claim was filed and settled."  Washington County argues the failure of Final Jury Instruction No. 15 to identify what conduct or acts the jury could consider as "adverse employment actions" left the jury with the misunderstanding that it could consider a "general change" in how Plaintiff [Goff] was treated, by relying on acts that clearly are not legally adverse employment actions." The Court again disagrees.

A single jury instruction should not be read in a vacuum.  The adequacy of jury instructions is determined by examining the instructions as a whole. *United States v. Skinner*, 667 F.2d 1306, 1310 (9th Cir.1982).  While Final Jury Instruction No. 15 did not delineate which actions could be considered "adverse," Final Jury Instruction No. 17 defined an adverse employment action as any action or conduct "reasonably likely to deter an employee from engaging in protected activity."  This instruction accords with the prevailing definition for adverse employment established in *Ray v. Henderson*, 217 F.2d 1234, 1242 (9th Cir. 2000).

As the Court noted in its discussion regarding whether Goff suffered an adverse employment action, the jury could have reasonably considered the totality of the circumstances and concluded that Goff suffered an adverse employment action.  Nothing in our Ninth Circuit precedent requires a court to provide a "laundry list" of employer conduct that the jury could only

consider as adverse employment actions as a matter of law.  As was also noted above, 42 U.S.C.

§ 2000(e)-3(a) "does not limit what type of discrimination is covered, nor does it prescribe a

minimum level of severity for actionable discrimination."  *Id.* (*citing Knox v. Indiana*, 93 F.3d

1327, 1334 (7th Cir. 1996)("There is nothing in the law of retaliation that restricts the type of

retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a

complaint.").[5]

     The jury instructions did not mislead the jury as to what it could consider as an adverse

employment actions.  Rather, the jury was properly instructed to only consider the allegedly

adverse actions by Washington County reasonably likely to deter employees from engaging in

protected activity, and a jury is assumed to have followed the Court's instructions.  *See, e.g.,*

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d

1058, 1083 (9th Cir. 2002).  Because the jury instructions contained an accurate description of the

---

     [5] While some actions may not rise to level of an adverse employment action, it is the Court's view that once a plaintiff has surpassed the summary judgment stage, it should be left for the jury to decide whether the plaintiff suffered an adverse employment action after being properly instructed with respect to the definition of adverse employment action.  *See Ray*, 217 F.3d at 1243 (*citing with approval Knox.*, 93 F.3d at 676 ("The law deliberately does not take a "laundry list" approach to retaliation, because unfortunately its forms are as varied as the human imagination will permit.  The instructions here correctly left the jury free to evaluate the record as a whole and to decide whether the State (in the person of the prison officials) retaliated against Knox for causing (by her invocation of Title VII rights) the demotion of the Lead Captain in the prison, by sitting on its hands in the face of the campaign of co-worker harassment about which it knew no later than May 7, 1992."); *see also Stinnet v. Safeway*, 337 F.3d 1213, 1217-1218 (10th Cir. 2003)("We hold merely that reassignment of an employee to a permanent position under circumstances such as those in this case presents a question of fact as to whether an employment action is adverse under McDonnell Douglas"); *Preda v. Nissho Iwai Am. Corp.*, 128 F.3d 789, 791 (2nd Cir. 1997) (reversing grant of summary judgment to a defendant in retaliation claim where alleged adverse actions were exclusion from meetings and reduction of job duties, such as to largely clerical tasks, because such allegations "raised a material question of fact about whether the terms of his employment were adversely affected in retaliation for protected activity") (*citing de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Serv.*, 82 F.3d 16, 21 (2d Cir. 1996); *Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980).  As the standard for defining adverse employment action by its terms demands a case-by-case analysis, the logical inference is that such an inquiry is factual in nature.  The fact that a minimal threshold must be met before an employment action can be considered adverse does not undermine the Court's reasoning – even factual questions may be decided as a matter of law at the summary judgment stage.

elements Goff had to establish to prove her claim of retaliation, and the instructions contained an explicit definition of "adverse employment action," the instructions were sufficient.

Washington County also argues that it was substantially prejudiced in its opportunity to show legitimate, non-retaliatory reasons for its actions with respect to Goff because the jury was improperly instructed regarding adverse employment actions. However, given the Court's conclusion that the jury was properly instructed regarding adverse employment actions, this argument must also fail.

## IV.
## Conclusion

In sum, the Court concludes that Steve Patterson was acting in the course and scope of his employment when he battered Goff and that he acted without malice or criminal intent. For these reasons, Patterson is immune from a suit of battery under Idaho Code § 6-904(3). The Court further concludes that Goff presented sufficient evidence from which a jury could infer that Washington County retaliated against Goff for her filing and settling the wage discrimination claim. Finally, the Court finds no error in the jury instructions that prejudiced Washington County as to Goff's claim against it for retaliation.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Motion Re ITCA (Docket no. 102), filed on November 18, 2005, is DENIED.

**Memorandum Decision and Order - page 25**

2) Defendants' Fed.R.Civ.P 59 Motion for a New Trial (Docket No. 107), filed on December 7, 2005, is DENIED.

3) Defendants' Renewed Fed.R.Civ.P 50 Motion, filed on December 7, 2005, is GRANTED IN PART AND DENIED IN PART.  It is granted as to the extent that the Court finds Steve Patterson is immune from a suit of battery under Idaho Code § 6-904(3).  Accordingly, the Judgment against Allan S. "Steve" Patterson (Docket No. 103) is DEEMED WITHDRAWN and without effect.

DATED: April 10, 2006

_____
Honorable Mikel H. Williams
United States Magistrate Judge